## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GARY D. MARSHALL**, | Case No. 6:15-cv-01194-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

Drew L. Johnson, 170 Valley River Dr. Eugene, OR 97401, and John E. Haapala, Jr., 401 E. 10th Ave., Ste. 240 Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Justin L. Martin, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 Mailstop 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Gary Marshall ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's

application for disability insurance benefits ("DIB") and supplemental security income ("SSI")

under Titles II and XVI of the Social Security Act. For the reasons discussed below, the

Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff is a sixty-two-year-old man who graduated from college with a Bachelor of Arts in architecture and who worked as an architect before his alleged onset date. AR 433. In 2003, Plaintiff lost his job and his then-wife left him. AR 437. He then became homeless, suffering two assaults during his period of homelessness. AR 437. On December 16, 2011, Plaintiff protectively filed an application for DIB and an application for SSI with an alleged onset date of June 7, 2009, later amended to March 29, 2009.[1] AR 12. At his alleged onset date, Plaintiff was considered a person of "advanced age" under the Social Security Act. AR 22. Plaintiff claims he is unable to work due to post traumatic stress disorder ("PTSD"), depression, history of head injuries, visual and audio hallucinations, memory problems, headaches, his history of assaults, a compression fracture in his lower vertebrae, and burns on his stomach and arms from being set on fire during his period of homelessness. AR 39, AR 203.

Plaintiff's applications were initially denied on June 27, 2012, and were again denied upon reconsideration on November 8, 2012. AR 12. A hearing was held on November 21, 2013, at Plaintiff's request. AR 12. Plaintiff was represented by counsel at the hearing. AR 28. A vocational expert ("VE") also appeared at the hearing. AR 12. Upon considering the evidence, the Administrative Law Judge ("ALJ") concluded that Plaintiff was not disabled as defined in the Social Security Act. AR 12. Plaintiff now seeks review of the ALJ's decision.

---

[1] In the "Jurisdiction and Procedural History" section of his decision, the ALJ noted that Plaintiff amended his alleged onset date at the hearing to "March 23, 2009." This is a typographical error. At the hearing, Plaintiff amended his alleged onset date to March 29, 2009. AR 32. Throughout the rest of his decision, the ALJ correctly noted the amended alleged onset date of March 29, 2009.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment
of work-related activities that the claimant may still perform on a regular
and continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

PAGE 5 – OPINION AND ORDER

**C. The ALJ's Decision**

The ALJ applied the sequential analysis. AR 14. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the onset date of March 29, 2009. *Id*. At step two, the ALJ found that Plaintiff has the following severe impairments: "major depression, anxiety, PTSD, lumbar degenerative disc disease, [and] history of alcohol abuse." *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of a listed impairment. AR 15. The ALJ found that Plaintiff has the RFC to perform medium work, with some limitations. AR 16. Specifically, the ALJ found:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can perform simple, repetitive, and routine tasks requiring no more than occasional interaction with the general public.

*Id.*

In making this decision, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, his statements about the intensity, persistence, and limiting effects of the symptoms were only partially credible. AR 17. The ALJ cited Plaintiff's activities of daily living ("ADL") as being supportive of the assessed RFC. AR 20. In determining the RFC, the ALJ gave significant weight to the opinions of examining physician Dewayde Perry, M.D., reviewing physician Nathaniel Arcega, M.D., and psychological consultant Richard Winslow, M.D. AR 20-21. The ALJ gave little weight to the opinions of treating physician Steven Koester, M.D., qualified mental health practitioner ("QMHP") Stephanie Ward, and Plaintiff's current wife Mrs. Deborah Marshall. AR 21-22.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 22. Based on the assessed RFC, age, education, and work experience, the ALJ determined based on the testimony of the VE that Plaintiff could perform jobs that exist in significant numbers in the national economy at step five. *Id*. The ALJ thus concluded that Plaintiff has not been under disability, as defined in the Social Security Act, from the alleged onset date of March 29, 2009 to the date of the ALJ's decision. AR 23.

## DISCUSSION

Plaintiff argues that the ALJ committed reversible error in steps four and five of his sequential analysis. Specifically, Plaintiff contends that the ALJ erred in: (A) rejecting Plaintiff's testimony; (B) rejecting the opinion of Plaintiff's treating physician Dr. Koester; (C) rejecting the opinion of QMHP Stephanie Ward; and (D) rejecting the lay opinion of Plaintiff's wife, Mrs. Marshall.

## A.  Plaintiff's Credibility

Plaintiff argues that the ALJ's reasons for discrediting Plaintiff's testimony were not sufficiently specific, clear, and convincing. The ALJ follows a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

PAGE 7 – OPINION AND ORDER

If the claimant passes the first step of the process, and "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

The ALJ applied the credibility evaluation process and at the first step determined that Plaintiff's medical impairments could result in Plaintiff's alleged symptoms. AR 17. At step two, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the] symptoms are not entirely credible." *Id*. Before making this determination, the ALJ summarized Plaintiff's symptom testimony, as well Mrs. Marshall's description of Plaintiff's symptoms. *Id*. Next, the ALJ stated that Plaintiff's' statements were not entirely credible "for the reasons explained throughout this decision" and that the "objective medical evidence does not support the claimant's allegations." AR 17-18.The ALJ then proceeded to summarize Plaintiff's medical evidence in the record. AR 18-20. The ALJ also concluded that Plaintiff's activities of daily living were consistent with an RFC allowing greater functionality. AR 20.

### 1.  Objective Medical Evidence

The ALJ concluded that the objective medical evidence does not support Plaintiff's allegations of disability. The ALJ's analysis of the medical records made no findings linking the summarized medical records to Plaintiff's testimony. The ALJ simply described Plaintiff's testimony and medical records separately, and accompanied these descriptions with a conclusory statement regarding Plaintiff's credibility. In his credibility analysis, the ALJ failed to identify *what* testimony was found not credible, and never explained *what* evidence contradicted that testimony.

It is not sufficient for the ALJ vaguely to conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting *Vasquez*, 572 F.3d at 592). When an ALJ summarizes the medical evidence without specifically identifying inconsistencies between claimant testimony and the medical evidence, the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)). An ALJ commits legal error if he or she does not make specific findings linking medical records to claimant testimony about intensity of pain. *Id*. at 494.

Because the ALJ did not make any specific findings or identify any inconsistencies, he erred in concluding that the objective medical evidence supports discounting Plaintiff's credibility. Accordingly, this is not a sufficiently clear and convincing reason to discredit Plaintiff's testimony.

### 2.  Activities of Daily Living

Daily activities can form the basis of an adverse credibility finding when the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work

skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v. Astrue*, 2012 WL 3922151 at * 4 (D. Or. Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v. Astrue*, 2012 WL 4210508 at * 6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations."). A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility). Furthermore, the ALJ must make "specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 494 F.3d at 639.

The ALJ found that Plaintiff's ADLs did not support his allegations regarding the severity of his physical impairments. AR 20. Specifically, the ALJ found that the ADLs were consistent with the ability to perform work at a medium exertional level. *Id*. The ADLs cited by the ALJ were that Plaintiff could walk for two hours at a time, perform household chores that do not require bending, perform occasional yard work, buy groceries, manage his personal care without difficulty, prepare meals, and work on his artwork.

With regard to walking, Plaintiff indicated that he would walk "most of the day" while being homeless, but had to stop to rest for twenty minutes approximately every twenty minutes

and required pain medication in order to do so. AR 45, 214-19. Therefore, the conclusion that

Plaintiff can walk for "two hours at a time" is unsubstantiated by the record. The record also

shows that Plaintiff does not perform any yard work due to his back pain other than showing his

wife with a stick where to place certain plants. AR 42. Plaintiff indicated both in his Function

Report and testimony that he has trouble with his personal care because he cannot bend to reach

his feet, and his wife has to put on his shoes and socks for him. AR 41-2, 215. That Plaintiff can

"manage his personal care without difficulty", therefore, is also not supported by substantial

evidence in the record.

As for Plaintiff's remaining ADLs that are supported by the record, they include reading,

watching TV, and visiting with his wife. AR 43. Although Plaintiff can perform household

chores that do not require bending, buy groceries, prepare meals, and work on his artwork, those

activities are done sporadically. Plaintiff works on his artwork "once in a while." AR 37.

Additionally, activities like working on artwork and coloring in coloring books have been

deemed "so undemanding that they cannot be said to bear a meaningful relationship to the

activities of the workplace." *Orn*, 495 F.3d at 639. Although Plaintiff does household chores that

do not require bending and prepares meals, these activities do not contradict Plaintiff's alleged

level of disability. *See Reddick*, 157 F.3d at 723 n.1 (limited cooking, cleaning, and shopping not

indicative of ability to engage in sustained work activity).

The ALJ failed to provide a clear and convincing reason to discredit Plaintiff's testimony.

Accordingly, the ALJ committed legal error in determining Plaintiff's credibility.

**B.  Dr. Steven Koester's Opinion**

Plaintiff also argues that the ALJ erred in giving "little weight" to the opinion of

Dr. Koester without providing specific and legitimate reasons supported by substantial evidence

in the record. The ALJ is responsible for resolving conflicts in the medical record, including

conflicts among physicians' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2).

A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence for discrediting the treating doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). Further, an ALJ may reject a physician's opinion if it conflicts with the physician's other findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

It is well-established that "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v Barnhart*, 278 F.3d, 947, 957 (9th Cir. 2002); *see also Crane v.*

*Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (holding that an ALJ may "permissibly reject . . .

check-off reports that [do] not contain any explanation of the bases of their conclusions").

Additionally, a "physician's opinion of disability 'premised to a large extent upon the claimant's

own accounts of [her] symptoms and limitations' may be disregarded where those complaints

have been 'properly discounted.'" *Morgan*, 169 F.3d at 602 (quoting *Fair v. Bowen*, 885

F.2d 597, 605 (9th Cir. 1989)).

"[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (quoting

*Robbins*, 466 F.3d at 882 (quotation marks omitted)). A reviewing court may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226. In assessing the ALJ's interpretation of the medical record, "[w]hen the evidence

before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's

conclusion." *Batson*, 359 F.3d at 1198.

Dr. Koester's opinion reads:

> This patient has medical problems which prevent full-time
> employment. He has post concussion symptoms, depression, and
> PTSD which do not allow him to work a job for 8 hours per day, 5
> days per week. These problems should be considered permanent.

AR 497.

## 1. Specific and Legitimate Reason Supported by Substantial Evidence

Dr. Nathaniel Arcega's opinion that Plaintiff could work at a medium exertional level

contradicted Dr. Koester's opinion that Plaintiff could not work. AR 20. Therefore, the ALJ need

only provide a specific and legitimate reason supported by substantial evidence for giving

Dr. Koester's opinion little weight. The ALJ gave the following reasons for giving Dr. Koester's

opinion little weight: (a) he opined on an area that is not of his expertise; (b) his opinion was

inconsistent with treatment notes from Plaintiff's counselor; (c) the opinion failed to identify specific limitations that would prevent the claimant from being able to work a normal workday or workweek; (d) the opinion was inconsistent with claimant's ADLs; and (e) the opinion was unsupported by claimant's treatment history and Dr. Koester's own treatment history with the claimant. AR 21.

### a. Opining on Area not within Expertise

The first reason the ALJ gave for discrediting Dr. Koester's opinion was that he opined on an area not in his expertise. The Ninth Circuit has noted that even though primary care physicians are not psychiatrists, they can and often do render psychiatric services. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). In *Sprague*, the court reasoned that when the primary care physician has prescribed psychotherapeutic drugs, he or she is in fact practicing psychiatry. *Id*. Thus, when a primary care physician's opinion is accompanied by clinical observations of depression or other mental disorders, that opinion is competent psychiatric evidence. *Id*. In this case Dr. Koester treated Plaintiff for depression and anxiety and kept treatment notes regarding those impairments. AR 513. Dr. Koester prescribed Clonazepam, Fluoxetine, and Trazodone to treat Plaintiff's depression and anxiety. AR 513-14. Dr. Koester's opinion, therefore, is competent psychiatric evidence, and the fact that he is not a mental health professional is not a legitimate reason for discrediting his opinion.

### b. Consistency with Counseling Notes

The second reason the ALJ provided for discrediting Dr. Koester's opinion was that his opinion was inconsistent with the notes from "Options Counseling," a mental health counseling service. QMHP Stephanie Ward provided Plaintiff's mental health counseling. AR 19. Ms. Ward during intake wrote in her diagnostic formulation that Plaintiff "meets criteria for major depressive disorder . . . reports that he has been diagnosed with PTSD in the recent past due to

his experiences with trauma." AR 524. As time progressed the counseling notes showed no

significant changes in Plaintiff's condition. AR 528-87. During a counseling session on

October 7, 2013 Plaintiff discussed that he identifies the intensity of his depression and anxiety

as "less than before," and on October 28, 2013, Plaintiff remarked that he is "feeling less

depressed and more motivated over the last week." AR 581, AR 587.

Although Plaintiff remarked on those particular dates that he had seen some improvement

in his condition, improvement does not equate to Plaintiff no longer having those impairments.

That a plaintiff who suffers from depression and anxiety "makes some improvement does not

mean that the person's impairments no longer seriously affect [his or] her ability to function in a

workplace." *Holohan*, 246 F.3d at 1205. When considered as a whole, the treatment notes from

Plaintiff's counseling do not conflict with Dr. Koester's statement that Plaintiff has PTSD,

depression, and anxiety or Dr. Koester's conclusion that Plaintiff is unable to work. Critically,

the ALJ failed to provide any explanation or specific examples as to how the counseling notes

contradicted Dr. Koester's opinion. The ALJ offered nothing but a conclusory statement that

they were inconsistent. AR 21. This is insufficient. In sum, the ALJ's second reason for

discrediting Dr. Koester's opinion is not supported by substantial evidence.

### c. No Specific Limitation Identified

The third reason provided by the ALJ in discrediting Dr. Koester's opinion was that

Dr. Koester failed to identify a specific limitation that would prevent Plaintiff from performing a

normal workweek. AR 21. An ALJ need not accept the opinion, whether or not that opinion is

contradicted, of any physician, including a treating physician, if that opinion is brief or

conclusory. *Magallanes*, 881 F.2d at 751; *see also Thomas*, 278 F.3d at 957; *Crane*, 76 F.3d

at 253. Although Dr. Koester identified conditions that Plaintiff had, Dr. Koester failed to

identify specific limitations created by the conditions or explain his opinion in any way.

Dr. Koester's opinion was brief and conclusory. AR 497. The ALJ was thus not required to accept the opinion. The third reason provided by the ALJ for rejecting Dr. Koester's opinion is sufficient under the applicable standard.

### d. Consistency with ADLs

The fourth reason the ALJ gave for rejecting Dr. Koester's opinion was its inconsistency with Plaintiff's ADLs. The ALJ determined Plaintiff has mild restriction in ADLs. As discussed above, Plaintiff's ADLs do not contradict his alleged level of disability. They also 'bear little if any relation to the impairments that Dr. Koester's opinion listed—PTSD, depression, and post-concussion symptoms—and do not contradict Dr. Koester's conclusion that Plaintiff is unable to work full time. The fourth reason for rejecting Dr. Koester's opinion is not supported by substantial evidence, and is insufficient to discredit Dr. Koester's opinion under the specific and legitimate standard.

### e. Support from Treatment History

Lack of support for Dr. Koester's opinion was the fifth and final reason given by the ALJ for discrediting the opinion. The ALJ stated that Plaintiff's general treatment history and Dr. Koester's own treatment history with Plaintiff did not support Dr. Koester's opinion. AR 21. This reason is not supported by substantial evidence in the record. First, Stephanie Ward's counseling notes establish that Plaintiff has PTSD, major depression, and post-concussion symptoms. AR 518, 533, 535, 541, 543, 545, 547, 555. Dr. Koester repeatedly described in his treatment notes that Plaintiff had PTSD and depression, and prescribed medication to help with symptoms of those impairments AR 513-14. Therefore, the fifth reason that the ALJ gave for discrediting Dr. Koester's opinion is not supported by substantial evidence, and is insufficient to discredit the opinion under the relevant standard.

### 2.  The Factors in § 404.1527(c)

The ALJ assigned Dr. Koester's opinion "little weight" with the sufficiently specific and legitimate reason that the opinion was overly conclusory. Plaintiff argues, however, that the ALJ failed to consider the factors listed in § 404.1527(c)(2)-(6). Even if a treating physician's opinion is not entitled to controlling weight because there is substantial evidence in the record contradicting the opinion, the ALJ is "instructed" by § 404.1527(c)(2) to consider the factors listed in § 404.1527(c)(2)-(6) to determine what weight to give the opinion of the treating physician. *Orn*, 495 F.3d at 633. Those factors include (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or area of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." Social Security Rule ("SSR") 06-03p.

The ALJ stated that he had considered the factors in 20 C.F.R. § 404.1527(c). AR 17. Although he did not specifically identify that he was considering the frequency of examination, he demonstrated consideration of that factor by listing specific treatment notes from numerous appointments between Dr. Koester and Plaintiff. AR 19. In his reasoning for rejecting Dr. Koester's opinion, the ALJ stated that Dr. Koester opined in an area not within his expertise, and that his opinion is inconsistent with medical evidence. AR 21. Although those reasons were insufficient to discredit Dr. Koester's opinion, they do show that the ALJ considered factors two and five from 20 C.F.R. § 404.1527(c). The ALJ also considered factors three and four in rejecting Dr. Koester's opinion, as is demonstrated by the ALJ's conclusion that Dr. Koester's opinion did not identify any specific limitation, which relates to how well Dr. Koester explained his opinion and what evidence was presented to support the opinion. Finally, although the ALJ

did not explicitly state how long Dr. Koester had treated Plaintiff, SSR 06-03p merely instructs

the ALJ to *consider* the factors, and does not state that the ALJ must explicitly analyze every

factor individually. Further, the ALJ did cite to treatment records of Dr. Koester spanning a few

years. Therefore, the ALJ sufficiently considered the factors in 20 C.F.R.§ 404.1527(c).

Additionally, regardless of the factors, the ALJ can still reject the opinion on the grounds that it

is brief or conclusory even if every factor in 20 C.F.R. § 404.1527(c) weighed heavily toward

fully crediting the physician's opinion. *Bayliss*, 427 F.3d at 1216.

### 3.  Conclusion

The ALJ provided a specific and legitimate reason for discounting Dr. Koester's opinion.

The ALJ's consideration of the factors in 20 C.F.R. § 404.1527(c) was not in error. Accordingly,

the ALJ did not err in giving Dr. Koester's conclusory opinion "little weight."

## C.  Weight of QMHP Stephanie Ward's Opinion

Plaintiff argues that the ALJ improperly rejected the opinion of QMHP Stephanie Ward,

Plaintiff's mental health counselor. SSR 06-03p defines "acceptable medical sources" as licensed

physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and

qualified speech pathologists. Health care providers who are not "acceptable medical sources,"

such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists,"

are still considered "medical sources" under the regulations, and the ALJ can use these other

medical source opinions in determining the "severity of [the individual's] impairment(s) and how

it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). Because Ms. Ward is a

mental health counselor, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without

comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent

testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness

for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In considering how much weight to give "other" medical source opinion evidence, the factors required for assessing medical source opinions *can* be considered. These factors include: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents

relevant evidence to support an opinion"; (4) "how well the source explains the opinion";

(5) "whether the source has a specialty or are of expertise related to the individual's

impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." SSR 06-

03p. The fact that a source is an "acceptable medical source" sometimes entitles that source's

opinions to more weight than the opinions from other medical sources. *Id.* Nonetheless, in

certain instances, after applying the factors for weighing opinion evidence, an ALJ may properly

find that an opinion from a medical source who is not an "acceptable medical source" outweighs

the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the
> opinion of a medical source who is not an acceptable medical
> source if he or she has seen the individual more often than the
> treating source and has provided better supporting evidence and a
> better explanation for his or her opinion. Giving more weight to the
> opinion from a medical source who is not an "acceptable medical
> source" than to the opinion from a treating source does not conflict
> with the treating source rules in 20 CFR 404.1527(d)(2) and
> 416.927(d)(2) and SSR 96-2p, "Titles II and XVI: Giving
> Controlling Weight To Treating Source Medical Opinions."

*Id.*

Ms. Ward opined that Plaintiff had moderately severe impairments in the ability to

maintain concentration, work in coordination with others, interact with the general public, travel

in unfamiliar places, and complete a normal workday or workweek. AR 500-02. The ALJ

provided the following reasons for rejecting Ms. Ward's opinion: (1) she is not a qualified

medical source capable of accurately assessing the claimant's mental restrictions; (2) her opinion

is not supported by anything in her counseling notes for the claimant; (3) her opinion is not

supported by the medical evidence; and (4) Plaintiff's ADLs support the RFC and not

Ms. Ward's opinion. AR 21.

With regard to the first reason, Plaintiff concedes that Ms. Ward is not a qualified medical source, since she is classified as an "other" medical source. This does not, however, mean that she is unqualified to assess Plaintiff's mental restrictions. "Other" medical sources are used to show the severity of the plaintiff's conditions and their effect on the plaintiff's ability to function. S.S.R. 06-03p. By virtue of her position as a mental health professional, she is qualified to assess the severity and effects of Plaintiff's mental restrictions.

As for the second reason, Ms. Ward's treatment notes generally support her opinion. In her treatment notes she discusses Plaintiff's struggles with depression, AR 518, 533, 535, struggles with memory and concentration, AR 531, 549, 561, 563, and panic attacks and anxiety, especially in public, AR 541, 543, 545, 547, 555. Thus, Ms. Ward's notes do not contradict her opinion and the ALJ's second reason is not one that is germane and supported by substantial evidence.

The third reason the ALJ cites as grounds for giving Ms. Ward's opinion "little weight" is that it is inconsistent with the medical evidence. The ALJ, however, provided no specific examples in the record that were inconsistent with Ms. Ward's opinion. The ALJ simply states that, "the medical evidence of record . . . [does] not support Ms. Ward's opinion." AR 21. Although the ALJ may "draw inferences logically flowing from the evidence," there is no evidence pointed to here upon which the Court can discern the ALJ's inferences. *Sample*, 694 F.2d at 642. Additionally, because the ALJ did not provide specific examples of inconsistencies with the medical record when discussing Plaintiff's credibility, the Court has no earlier reasoning from which to extrapolate to the ALJ's assessment of Ms. Ward's credibility.

Finally, the ALJ's conclusion that Ms. Ward's opinion was inconsistent with Plaintiff's ADLs is a rational interpretation of the evidence in the record. Ms. Ward opined that Plaintiff

had moderately severe impairments in the ability to maintain concentration, work in coordination with others, interact with the general public, travel in unfamiliar places, and complete a normal workday or workweek. AR 500-02. Plaintiff's ability to go grocery shopping could rationally be construed as being inconsistent with Ms. Ward's opinion that Plaintiff has moderately severe impairments in interacting with the general public. Rational minds may disagree as to whether grocery shopping constitutes sufficient interaction with the public to show that a person lacks moderately severe impairments in interacting with the general public. Nonetheless, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. Accordingly, the ALJ's conclusion that Plaintiff's ADLs were inconsistent with Ms. Ward's opinion that Plaintiff was moderately severely impaired in interacting with the general public is a sufficiently germane reason for rejecting Ms. Ward's opinion.

Plaintiff also argues that the ALJ improperly failed to consider the factors described in SSR 06-03p in weighing Ms. Ward's opinion. Notably, these factors are discretionary in the context of considering other medical source opinions. *See, e.g.*, *Slover v. Comm'r, Soc. Sec. Admin.*, 2011 WL 1299615, at *15 (D. Or. Apr. 4, 2011) ("However, as noted in SSR 06–03p, the regulations in the relevant CFR sections which enumerate these factors, explicitly apply only to the evaluation of medical opinions from acceptable medical sources. Thus, while the SSA states in SSR 06–03p that these factors 'represent basic principles that apply to the consideration of all opinions from [other medical sources],' it does not mandate their application to other medical sources." (citations omitted) (alteration in original)). Reviewing the ALJ's decision, it appears that he considered some, but not all, of the factors. Under the applicable law, however, this does not render erroneous  the ALJ's decision to give Ms. Ward's testimony little weight.

**D.  Weight of Mrs. Deborah Marshall's Testimony**

Plaintiff argues that the ALJ improperly rejected Mrs. Marshall's lay opinion without

providing a germane reason. As discussed above, lay witness testimony may not be rejected

without comment, although the testimony of each lay witness need not be discussed individually

in detail and reasons for discounting one witness may be applicable to and considered germane

for discounting a lay witness who provided similar testimony. *See Molina*, 674 F.3d at 1114-15,

1118-19, 1122; *Stout*, 454 F.3d at 1053.

Mrs. Marshall wrote a letter stating that Plaintiff experiences difficulties in motivation

and performing tasks around the house, and that he "acts like an eight year old." AR 258-59. The

ALJ's reasoning for rejecting the statement of Mrs. Marshall included the fact that she is not

medically trained to make observations as to dates, frequencies, types, and degrees of medical

signs and symptoms, or of the frequency or intensity of moods or mannerisms, as well as the fact

that her statements are, "like the claimant's, inconsistent with the preponderance of the opinions

and observations by medical doctors in this case." AR 21-2. Plaintiff concedes that

Mrs. Marshall is not medically trained and emphasizes that Mrs. Marshall is a lay witness. Lay

witnesses may be introduced to show the severity of the plaintiff's impairment and how it affects

the plaintiff's ability to work. 20 C.F.R. § 404.1513(d). Lay witness testimony is categorically

different than medical source testimony. That a lay witness is not medically trained is not a

germane reason to reject the lay witnesses' testimony. *See Bruce v. Astrue*, 557 F.3d 1113, 1116

(9th Cir. 2009), *see also Lucier v. Colvin*, 2014 WL 3597383, at *1 (C.D. Cal. Jul. 21, 2014).

As for the inconsistency between Mrs. Marshall's statement and the "preponderance of

opinions and observations by medical doctors," the ALJ again failed to identify any particular

opinion or explain what is inconsistent between Mrs. Marshall's statement and any medical

opinions. Additionally, most of the doctors' opinions and observations do not make statements

PAGE 23 – OPINION AND ORDER

pertaining to Plaintiff's motivation or difficulty in performing tasks around the house. To the

extent that some medical observations inferentially refer to Plaintiff's motivation levels, the vast

majority state that Plaintiff has depression, which may very well inhibit his affect and

motivation. AR 437, 513-14, 518, 533, 535. Those observations and opinions support

Mrs. Marshall's statement. The ALJ failed to provide germane reasons for rejecting

Mrs. Marshall's statement.

## E.  Reverse and Remand for Further Proceedings

Plaintiff urges the Court to reverse and remand for immediate payment of benefits, or in

the alternative, remand to allow the ALJ fully to consider the evidence and correct the errors in

the analysis of Plaintiff's case. The government also urges the Court to remand for further

proceedings if there is harmful error in this case. Within the Court's discretion under 42 U.S.C.

§ 405(g) is the "decision whether to remand for further proceedings or for an award of benefits."

*Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the

agency for additional investigation or explanation, a court has discretion to remand for

immediate payment of benefits. *Treichler*, 775 F.3d at 1099-1100. The issue turns on the utility

of further proceedings. A remand for an award of benefits is appropriate when no useful purpose

would be served by further administrative proceedings or when the record has been fully

developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A

court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence

that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act.

*Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court.

*Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for

the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal
> error, such as failing to provide legally sufficient reasons for
> rejecting evidence. If the court finds such an error, it must next
> review the record as a whole and determine whether it is fully
> developed, is free from conflicts and ambiguities, and all essential
> factual matters have been resolved. In conducting this review, the
> district court must consider whether there are inconsistencies
> between the claimant's testimony and the medical evidence in the
> record, or whether the government has pointed to evidence in the
> record that the ALJ overlooked and explained how that evidence
> casts into serious doubt the claimant's claim to be disabled. Unless
> the district court concludes that further administrative proceedings
> would serve no useful purpose, it may not remand with a direction
> to provide benefits.
>
> If the district court does determine that the record has been fully
> developed and there are no outstanding issues left to be resolved,
> the district court must next consider whether the ALJ would be
> required to find the claimant disabled on remand if the improperly
> discredited evidence were credited as true. Said otherwise, the
> district court must consider the testimony or opinion that the ALJ
> improperly rejected, in the context of the otherwise undisputed
> record, and determine whether the ALJ would necessarily have to
> conclude that the claimant were disabled if that testimony or
> opinion were deemed true. If so, the district court may exercise its
> discretion to remand the case for an award of benefits. A district
> court is generally not required to exercise such discretion,
> however. District courts retain flexibility in determining the
> appropriate remedy and a reviewing court is not required to credit
> claimants' allegations regarding the extent of their impairments as
> true merely because the ALJ made a legal error in discrediting
> their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation

marks omitted).

The ALJ in this case committed error in discrediting Plaintiff's credibility with

insufficient reasons and by failing to provide germane reasons for discrediting Mrs. Marshall's

statement. These errors are sufficiently harmful to justify reversal of the ALJ's decision.

Nonetheless, the record in this case is not fully developed and free from ambiguities and

conflicts. The record contains conflicts material among the opinions of examining physicians,

treating physician Dr. Koester, Mrs. Marshall, and Plaintiff's own statements regarding the

severity and limiting effects of Plaintiff's impairments. There is also some evidence in the record

of Plaintiff's ability to cope with his impairments with the help of medication, calling into

question the severity of Plaintiff's impairments. AR 435, 437, 581, 587. Therefore, a remand for

an award of benefits would be inappropriate. The case will benefit from further proceedings

where the ALJ should properly consider the testimony of Plaintiff and Mrs. Marshall, determine

whether those opinions, if properly considered, affect the weight given to Dr. Koester or

Ms. Ward's testimony, and resolve any remaining conflicts in the record. The case, therefore, is

remanded for further administrative proceedings.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further

administrative proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of July, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge